IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNAE HAMID, *et. al.* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO.: 19-3773** |
| | : | |
| THE CHESTER COUNTY HOSPITAL, | : | |
| d/b/a PENN MEDICINE | : | |
|    and | : | |
| UNIVERSITY OF PENNSYLVANIA | : | |
| HEALTH SYSTEM | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY
AN FLSA COLLECTIVE ACTION AND TO SEND NOTICE TO THE CLASS**

Plaintiff, Jennae Hamid (*hereinafter* "Plaintiff" unless otherwise indicated), by and through her undersigned counsel, hereby moves the Court to conditionally certify a Fair Labor Standards Act collective action and order notice to be sent to members of a class defined as follows: (i) Nursing Staff of Defendants including RNs and LPNs over the last three years prior to the filing of the complaint; (ii) who worked within Chester County Hospital physically; (iii) who performed work but were not paid minimum wages or overtime wages of at least one and one half times the applicable regular rate for each hour worked beyond forty (40) hours in a given work week; and (iv) who opt in to this collective action.

As set forth in Plaintiff's accompanying Memorandum of Law, incorporated by reference, this case meets the standard for conditional certification. Plaintiff has shown that the proposed class members are similarly situated pursuant to 29 U.S.C. §216(b). Additionally, the Court should authorize notice to the class, as court authorization of notice to the class in an

FLSA collective action serves the legitimate goal of avoiding duplicative suits and setting cutoff dates to expedite disposition of the action. A proposed Order is submitted herewith.

                Respectfully submitted,

                **KARPF, KARPF & CERUTTI, P.C.**

                */s/ Timothy S. Seiler*
                Ari R. Karpf, Esq.
                Timothy S. Seiler, Esq.
                Two Greenwood Square
                3331 Street Road, Suite 128
                Bensalem, PA 19020
                (215) 639-0801 Phone
                (215) 639-4970 Fax

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JENNAE HAMID, *et. al.* : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | **CIVIL ACTION NO.: 19-3773** |
| : | |
| THE CHESTER COUNTY HOSPITAL, : | |
| d/b/a PENN MEDICINE : | |
| and : | |
| UNIVERSITY OF PENNSYLVANIA : | |
| HEALTH SYSTEM : | |
| : | |
| Defendants. : | |
| : | |

# ORDER

**AND NOW,** this _____ day of _____, 2020, after consideration of Plaintiff's Motion to Conditionally Certify an FLSA Collective Action, and in consideration of Defendants' response thereto, it is hereby **ORDERED** that Plaintiff's Motion is **GRANTED**. A collective action is conditionally certified of individuals comprised of: "All Nursing Staff of Defendants who worked within Chester County Hospital from August 22, 2016 through present and worked more than 40 hours in any week and/or worked through any lunch breaks during the same time period." Defendants shall provide Plaintiff's Counsel with the last and best-known full name, mailing address, email address, job title, pay rate(s) and dates of employment for each member of the conditional collective within thirty (30) days of this Order.

_____
The Honorable Michael M. Baylson, U.S.D.J.

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JENNAE HAMID, *et. al.* | : |
| Plaintiffs, | : |
| v. | : **CIVIL ACTION NO.: 19-3773** |
| THE CHESTER COUNTY HOSPITAL, d/b/a PENN MEDICINE and UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM | : |
| Defendants. | : |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION TO CONDITIONALLY CERTIFY
AN FLSA COLLECTIVE ACTION AND SEND NOTICE TO THE CLASS**

**I.  INTRODUCTION**

Plaintiff, Jenna Hamid ("Plaintiff"), filed this action on behalf of herself and other similarly situated current and/or former employees of The Chester County Hospital and University of Pennsylvania Health System (*hereinafter* "Defendants") pursuant to 29 U.S.C. § 216(b). Plaintiff alleges that her and other employees similarly situated to her (nurses) are non-exempt employees who performed work for Defendants but on countless occasions were not properly paid 1) the correct hourly shift rates previously agreed upon, thereby resulting in improper overtime compensation; 2) the correct weekend hourly rates previously agreed upon, thereby resulting in improper overtime compensation; 3) the correct holiday rates previously agreed upon, thereby resulting in improper overtime compensation; and 4) time for breaks which employees did not take, but were nevertheless autodeducted from their pay. These failures to

4

accurately compensate employees have resulted in failures to pay minimum wages and proper overtime rates on a consistent basis, constituting violations of the Fair Labor Standards Act.

Plaintiff now moves the Court to conditionally certify a Fair Labor Standards Act ("FLSA") collective action and order notice to be sent to members of a class defined as follows: (i) Nursing Staff of Defendants including RNs and LPNs over the last three years prior to the filing of the complaint; (ii) who worked within Chester County Hospital physically; (iii) who performed work but were not paid minimum wages and/or overtime wages of at least one and one half times the applicable regular rate for each hour worked beyond forty (40) hours in a given work week; and (iv) who opt in to this collective action.

## II.  STATEMENT OF THE CASE

1. Plaintiff Jennae Hamid (*hereinafter* "Plaintiff Hamid") has worked for Defendants at Chester County Hospital ("CCH") for approximately ten (10) years, most of which she has spent as an hourly-paid registered nurse. *See* Plaintiff's Affidavit, attached hereto as "Exhibit A," at ¶¶ 2-4; *See* Plaintiff's Complaint, Docket Entry No. 1 at ¶ 12.

2. Plaintiff has brought this lawsuit on behalf of herself and all similarly situated employees, which includes 1) <u>Only</u> individuals who have been <u>physically employed within</u> Defendant CCH physically for Defendants <u>within the 3 years preceding the filing of [t]his lawsuit</u> and anytime through the present and pendency of this lawsuit; and 2) <u>Only nursing staff</u> of Defendants, inclusive of Registered Nurses ("RNs") and Licensed Practical Nurses ("LPNs") as they have, ***based upon Plaintiff's work, experience, and observations performed similar roles, worked similar schedules, and have been treated in the same manner***. Docket Entry No. 1 at ¶ 13 (emphasis added).

3.  Plaintiff and the proposed collective are non-exempt employees who are entitled to overtime compensation and experience many types of wage and overtime violations on a weekly basis. *Id.* at ¶ 14.

4.  As outlined within Plaintiff's complaint, Plaintiff and all similarly situated employees performed work for Defendants, but on countless occasions were not properly paid 1) the correct hourly shift rates previously agreed upon, thereby resulting in improper overtime compensation; 2) the correct weekend hourly rates previously agreed upon, thereby resulting in improper overtime compensation; 3) the correct holiday rates previously agreed upon, thereby resulting in improper overtime compensation; and 4) time for breaks which employees did not take, but were nevertheless autodeducted from their pay. Docket Entry No. 1 at ¶¶ 13, 16-30

5.  As it pertains to shift and holiday differentials, Plaintiff has identified that rates to be paid are set at a matter of policy, and that as a matter of course, Defendants have engaged in a practice of failing to properly pay these wages through payroll miscalculations. *Id.* at ¶¶ 16, 18-22, 27-29, 34.

6.  Plaintiff has further identified that the practices, policies, and procedures utilized by Defendants throughout her tenure of automatically deducting breaks from the pay of the nursing staff when they have not actually taken them has persisted. *Id.* at ¶¶ 23-26, 34.

7.  In addition to what has been outlined in her complaint identifying the nature of her claims, the policies and procedures at issue, as well as the particular members of Defendants' staff that the violations impacted (the nursing staff at CCH), Plaintiff has also provided an affidavit further identifying her knowledge of Defendants' procedures regarding these violations and how they would similarly impact other members of the nursing staff across CCH. Exhibit A.

8.  Specifically, Plaintiff further identified:

6

- Throughout my employment, I have served in several different nursing positions at CCH as an RN, including as a part time nurse, and also as a nurse within Defendants' IHR (In House Registry) and WIN (Weekend) programs.

- In performing my duties as a nurse, I have worked in almost every unit at CCH, including the Emergency Department, Ground West, One West, Two West, the Surgical Care Unit ("SCU"), Three North, Four North, Three Lasko, Four Lasko, and Pediatrics.

- Despite the changes in my nursing title and designated nursing programs over the years, my duties have remained largely the same, which involve standard nursing care to patients, as with all other nurses working within CCH.

- Within each of the programs I have worked, as with all other programs to my knowledge pertaining to Defendants' nurses, each nurse is provided with pay differentials depending on what shift they are working and whether that shift is during a holiday (although the rate amount may change depending on program and/or experience).

- Regardless of the positions or departments that I worked in when performing nursing duties within CCH, however, payroll, including the process for how hours and breaks were submitted and paid, was the same throughout my employment other than an overall shift to an electronic system in or about 2018. That is because this process is the same for all nurses working within CCH.

- For the first several years of my employment, the payroll procedure was for nurses in each department to submit the hours they worked each day by writing on handwritten sheets in a binder, kept within each department. These sheets would list the names and hours of each nurse working within the department, on which each nurse was also supposed to indicate if they did not take their break during their shift.

- Eventually, in or about 2018, the system switched to an electronic system, but it too operates in a similar fashion. Time would be punched in and out of a timeclock, and nurses would similarly provide whether or not they took their break during each shift.

- With both systems, once the hours were submitted, it is my understanding from policy, management, and discussing pay issues with payroll personnel, that the payroll for each CCH department would then be submitted to a centralized location for processing and payment.

- Unfortunately, I was not properly paid for various wage rates and overtime as outlined in the complaint under both payroll systems and within each nursing

7

position or related program that I have maintained during my employment at CCH.

- I am aware that all nurses have utilized the same payroll systems based on my own experience in working various positions in different departments, as well as witnessing other nurses utilizing the systems in the same manner and being part of meetings with management and various nurses describing utilization of the systems and issues pertaining to the same. Moreover, as it pertained to improper wage and rate payments as outlined in my complaint, I also know that these issues have occurred with other individuals of CCH from conversations that I have had with various nurses about the same throughout my employment.

- I complained numerous times to management and payroll personnel throughout my employment as to the wage and overtime issues outlined in the complaint. When I would discuss these issues with payroll, it was obvious that these were not only issues that pertained to me individually, but those issues, including improper wage rates being applied to employees working more than 40 hours in a week, was a policy that was typically applied by Defendants to all nurses. While there was an acknowledgement by payroll that incorrect pay rates were being used for compensation purposes in my checks, I was given the justification that the practice was intended simply to provide a favorable result to nurses, which was simply not true based on the results. I was also separately told that although CCH was aware of the issues that were creating problematic results for nurses, they simply could not afford to change their incorrect practices. Despite my complaints, the payroll issues were never fully resolved. *See also* Docket Entry No. 1 at ¶ 30.

- As it pertains to breaks, although I often indicated during my employment that I had not taken a break during my shift, allotted time for a break would nevertheless consistently be autodeducted from my pay despite that I had not taken one.

- Unfortunately, throughout the majority of my employment, there has been a lack of adequate procedures in place to ensure that all members of the nursing staff would receive breaks. The lack of staffing in this regard was not only limited to one department. Instead, I experienced such limitations in staffing throughout every department I worked in throughout my time with Defendants.

- It would even be acknowledged by management that nurses weren't getting breaks during staff meetings held by management, and nurses would often indicate that taking breaks was impossible due to Defendants' established policy of understaffing. In response to this notice to management that nurses weren't getting breaks, rather than ensuring adequate coverage so that nurses could take their breaks, we were instead informed by management during

8

>these meetings that due to policy directives from higher management and payroll, if a lack of breaks were indicated too often by nurses, we would be called into the office regarding our failures to take breaks to discuss disciplinary considerations. This would cause nurses to avoid indicating their lack of breaks in submission of their time worked, a practice nurses would also make management aware of during meetings discussing the issue.

Exhibit A.

9. Additionally, Plaintiff attaches herewith documents identifying Defendants' relevant policies similarly applying to the entire nursing staff, *some* of the complaints made by Hamid during her employment identifying various issues to Defendants' payroll personnel, and showing shift differentials for at least two positions worked by Plaintiff. *See* Documents, attached hereto as "Exhibit B" including:

a. Pay Practices and Procedures directing ***all employees*** to the same centralized "payroll department" to report concerns;

b. Meal Breaks and Work Breaks policy applying to ***all employees*** and specifying a practice of autodeduction;

c. July 15, 2016 Email identifying that overtime rates are based on incorrect figures;

d. April 28, 2017 Email identifying incorrect overall rates and overtime rates being used;

e. July 15, 2018 Email identifying incorrect rate being used for overtime;

f. August 31, 2018 Email identifying wage miscalculations, that others have the same issues, and need for an additional meeting to discuss failures to correct the same;

g. August 31, 2011 Letter evidencing part time nurse position with shift differential; and

       h. January 2014 Agreement evidencing shift differential in Temporary Entity Transfer Program.

## III. LEGAL ANALYSIS

### A. Legal Standards Governing FLSA Representative Actions

The FLSA provides workers such as Plaintiffs a right to sue collectively on behalf of themselves and others similarly situated individuals for violations of the minimum wage and overtime provisions of the Act. See 29 U.S.C. § 216(b). However, unlike Fed. R. Civ. P. 23 class actions in which individuals are members of a class until they affirmatively "opt-out," each individual member of a FLSA representative action must consent in writing ("opt-in") to become part of the suit. Specifically, the FLSA provides that such an action:

> may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

In deciding whether a suit brought under § 216(b) may move forward as a collective action, courts typically employ a two-tiered analysis. During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. If the plaintiff carries his burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery. *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011).

The Court usually only has minimal evidence before it at this stage, in the form of pleadings and affidavits submitted by parties. *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493, 497 (D.N.J. 2000). The Third Circuit has held that the named plaintiff need only make a 'modest factual showing' that the proposed recipients of opt-in notices are similarly situated. *Symczyk*, 656 F.3d at 192. As stated by the court in *Gauzza v. Prospect Med. Holdings, Inc.*:

> The question here is whether Plaintiffs can, "make a 'modest factual showing'—something beyond mere speculation[,]" [*Halle v. W. Penn Allegheny Health Sys., Inc*., 842 F.3d 215, 224 (3d Cir. 2016)] (quoting *Zavala*, 691 F.3d at 536 n.4), that demonstrates "a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." Id. (quoting same). While Plaintiffs must supply "something beyond mere speculation[,]" id., sister courts within this Circuit have characterized the conditional certification inquiry as "extremely lenient," *Waltz v. Aveda Transp. & Energy Servs*., 2016 U.S. Dist. LEXIS 178474, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016), "routinely granted," *Verma v. 3001 Castor, Inc*., 2014 U.S. Dist. LEXIS 88459, 2014 WL 2957453, at *12 (E.D. Pa. June 30, 2014), and not an appropriate setting to "weigh the evidence, resolve factual disputes, or reach the merits of [Plaintiffs'] claims," *Neal v. Air Drilling Assocs*., 2015 U.S. Dist. LEXIS 5554, 2015 WL 225432, at *3 (M.D. Pa. Jan. 16, 2015). Cf *Reed v. Empire Auto Parts, Inc*., 2015 U.S. Dist. LEXIS 21112, 2015 WL 761894, at *4 (D.N.J. Feb 23, 2015) (finding that inquiry should be whether "the claims of the putative class can be proven through common evidence, versus individualized testimony.").

*See* Gauzza v. Prospect Med. Holdings, Inc., No. 17-3599, 2018 U.S. Dist. LEXIS 184306, at *3-4 (E.D. Pa. Oct. 26, 2018). As such, while the named plaintiff must show a factual nexus between his situation and the situation of other current and former employees sufficient to determine that they are similarly situated, ***the Court uses an extremely lenient standard to determine whether potential collective action members are similarly situated***. *Id.; See also*

11

*Aquilino v. Home Depot, Inc.*, 2006 WL 2583563, at *2 (D.N.J. Sept. 7, 2006); *Morisky*, 111 F.Supp.2d at 497.

Any arguments regarding the merit of Plaintiff's allegations or Defendants' defenses as to liability under the FLSA at this stage ***are not relevant*** to the instant motion and should not be evaluated or decided by the Court at this stage. *Pereira v. Footlocker, Inc.*, 261 F.R.D. 60, 63-34 (E.D. Pa. 2009) (holding that "[t]he merits of Plaintiff's claims do not need to be evaluated at this stage in order for notice to be approved and sent out to proposed conditional collective action members). Therefore, ***the only question*** that the Court has to determine during the initial phase is whether the plaintiffs are similarly situated. *Id.*

Once the plaintiff has met the low burden of establishing that "the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff," the court will then "'conditionally certify' the collective action for the purposes of notice and pretrial discovery." *Potoski v. Wyo. Valley Health Care Sys.*, 2013 U.S. Dist. LEXIS 177932, 8 (M.D. Pa. Dec. 19, 2013) (citing *Symczyk v. Genesis Healthcare Corp.,* 656 F.3d 189, 192 (3d Cir. 2011), rev'd on other grounds, *Symczyk,* 133 S. Ct. 1523, 1526, 185 L. Ed. 2d 636 (2013)).

If the court grants conditional certification in stage one, such decision is not one of finality. In stage two of an FLSA collective action, the defendant has the ability to decertify the class, "[o]nce discovery is largely complete and the case is ready for trial." *Zanes v. Flagship Resort Dev*., LLC, 2010 U.S. Dist. LEXIS 118975, 7-8 (D.N.J. Nov. 9, 2010). "If the defendant moves to decertify the class, a second, ***final determination*** on class certification will be made during stage two. *Id.* at *7-8 (emphasis added). "The 'sole consequence of conditional certification is the dissemination of court-approved notice to potential collective action members.'" *Gauzza*, No. 17-3599, 2018 U.S. Dist. LEXIS 184306, at *2-5 (*citing Halle,* 842

12

F.3d 215, 224). "For that reason, conditional certification 'is not really certification' at all, but rather 'the district court's exercise of its discretionary power, upheld in *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989), to facilitate the sending of notice to potential class members.'" *Id.* (*citing Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012)). "Further down the road, the second step—known as 'final certification'— would require Plaintiffs to show that any plaintiffs who opt into the collective are indeed 'similarly situated' for purposes for the FLSA." *Id.* (*Citing Halle,* 842 F.3d at 226).

### B. Plaintiff Has Met Her Burden in Establishing that the Enumerated Employees Listed in the Complaint are Similarly Situated.

As identified above, Plaintiff's burden of establishing that the individuals listed in their Complaint are similarly situated to them is low and an extremely lenient standard. The individual circumstances of the proposed collective are not at issue here; instead, there are central issues of whether Defendants' payroll procedures and systems properly paid employees for minimum wages and overtime pertaining to proper wage rates and breaks that they worked through. Plaintiff has shown through her Complaint and affidavit that the similarities between the employees of the proposed collective pertaining to the impermissible pay and break structure implemented by Defendants overwhelm any differences.

In this case, Plaintiff has alleged in her Complaint and affidavit that her and the members of the proposed collective share the following similarities: 1) they all perform the same or substantially similar job function and work under the same general job classification as Nurses; 2) They all physically work within Chester County Hospital; 3) They all worked at some point within the last three years prior to the filing of the complaint; 4) They are all classified as hourly employees and nonexempt; 5) They are all subject to Defendant's policies and procedures with

respect to pay rates, shift differentials, overtime, and meal breaks; 6) They all utilized the same systems and procedures for reporting working hours and breaks (or lack thereof); 7) The hours of all nurses are submitted to and paid by the same centralized payroll location; and 8) All nurses within the proposed class have performed overtime and/or have worked through breaks without having been properly paid overtime and/or minimum wages for the same. Plaintiff has further identified her knowledge as to these similarities and the application of Defendants' illicit practices and procedures across nursing positions, programs, and units throughout CCH through her own significant experience at CCH, Defendants' policies, as well as through staff meetings and conversations with payroll, management, and other nurses of CCH.

The similarities between Plaintiffs and the class are overwhelming and easily satisfy the relaxed evidentiary standard for the first stage of conditional certification. This is the case not only with Defendants' improper usage of wage rates, which have adversely affected overtime rates and will ultimately be shown by arithmetic and mathematical calculation pertaining to Defendants' payroll calculations, but also with the improper deduction of break times (much of which will also easily by shown simply by comparing the time sheets and break indications submitted by employees with what they were actually paid and whether time was nevertheless deducted from their pay to account for breaks which had not been taken). *See Galt v. Eagleville Hosp.,* 238 F. Supp. 3d 733, 736 n.17 (E.D. Pa. 2017)(collecting cases and granting conditional certification regarding autodeduction of lunch breaks after considering affidavits by plaintiffs based on "person experience working in multiple units…as well as their contacts with other employees" and descriptions of "common conditions of employment that allegedly affected proposed class members similarly")(citing *Holley v. Erickson Living*, Civil Action No. 11-2444, 2012 U.S. Dist. LEXIS 70335, 2012 WL 1835738, at *6 (E.D. Pa. May 21, 2012) (granting

14

conditional certification motion in similar FLSA meal-break case where plaintiff's declaration showed that defendant automatically deducted 30 minutes of meal time from employees' shifts even if the employees were forced to work during the break); *Williams v. Owens & Minor, Inc.*, Civil Action No. 09-00742, 2009 U.S. Dist. LEXIS 102304, 2009 WL 5812596, at *3 (E.D. Pa. Oct. 9, 2009) (conditionally certifying class for FLSA meal-break claim based on plaintiffs' sworn declarations and deposition testimony); *Taylor v. Pittsburgh Mercy Health Sys., Inc.*, Civil Action No. 09-377, 2009 U.S. Dist. LEXIS 57328, 2009 WL 2003354, at *2 (W.D. Pa. July 7, 2009) (finding plaintiffs' declarations were sufficient to conditionally certify class based on unwritten policy that meal-break time was deducted from employees paychecks even if employees worked during meal breaks)); *Gauzza v. Prospect Med. Holdings, Inc.*, No. 17-3599, 2018 U.S. Dist. LEXIS 184306, at *2-5 (E.D. Pa. Oct. 26, 2018)(granting conditional certification regarding autodeducted meal breaks based on declarations and policies across multiple hospitals); *Potoski v. Wyo. Valley Health Care Sys.*, No. 3:11-cv-582, 2013 U.S. Dist. LEXIS 177932, at *15-23 (M.D. Pa. Dec. 19, 2013)(granting conditional certification regarding autodeducted meal breaks); *Kuznyetsov v. W. Penn Allegheny Health Sys.,* No. : 2:09-cv-00379-DWA, 2009 U.S. Dist. LEXIS 47163, at *12-17 (W.D. Pa. June 1, 2009)( granting conditional certification regarding autodeducted meal breaks based on the policy extending to all employees and noting that a policy reliant solely on employees to notify of their failures to take breaks arguably impermissibly shifts FSLA responsibilities to employees).

**C. Plaintiff's Proposed Notice Should be Approved and Defendants Should be ordered to Provide Information Regard Prospective Class Members.**

The Court's authority to facilitate notice to potential opt-in plaintiffs in representative actions was established by the United States Supreme Court in *Hoffman-LaRoche, Inc. v.*

*Sterling,* 493 U.S. 165 (1989). In *Hoffman*, the Court also recognized that the benefits of a representative action depend on the potential plaintiffs receiving timely and accurate notice of the action. Thus, the Court held that § 216(b) gave district courts the power to facilitate notice, and that such power should be exercised during the early stages of litigation.

After the Supreme Court's decision in *Hoffman*, lower courts have uniformly exercised their power to facilitate notice. *See, e.g., Pereira*, 261 F.R.D. at 62 ("Actions brought under the FLSA are collective actions, and 'no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Roebuck v. Hudson Valley Farms, Inc.,* 239 F.Supp.2d 234, 241(N.D.N.Y. 2002); *Realite v. Ark Restaurants Corp.,* 7 F. Supp. 2d at 308; *Belcher v. Shoney's, Inc.,* 927 F. Supp. 249, 251 (M.D. Tenn. 1996); Thus, it is well-established that this Court has authority to approve and order notice to potential opt-in plaintiffs, and that such notice is essential to effectuating the broad remedial purposes of the FLSA.

The provision of early notice to the collective is essential for statute of limitations purposes, as the statute continues to run as to potential plaintiffs, who may largely remain unaware of their rights or the option to cost effectively join this action, until notice is provided to them.

A copy of Plaintiffs' proposed notice is attached to the instant motion as "Exhibit C." Such notice is closely tailored to Plaintiffs' FLSA allegations and advises the potential opt-in plaintiffs (in neutral language) of the nature of the lawsuit and their opportunity to join the lawsuit. The Notice clearly advises the recipients that they will be bound by the Court's judgment if they choose to opt in; that the Defendants deny the allegations made against them; and that, while the Court has authorized its sending, the Court has not taken any position on the merits of the case.

The Notice also instructs potential class members about how and when to opt in should they choose to do so, and includes a form for that purpose.

In the event that this Honorable Court grants Plaintiff's Motion for Conditional Certification as requested, and approves Plaintiff's notice, Plaintiff further respectfully requests that Defendants be ordered to provide the Undersigned Counsel with the last and best known full name, mailing address, email address, job title, pay rate(s) and dates of employment for each member of the conditional class within thirty (30) days of the Court's Order for notice purposes.

### IV.   CONCLUSION

For the forgoing reasons, Plaintiff respectfully submits that this Honorable Court should conditionally certify this action as an FLSA collective action on behalf of the collective defined in the instant motion. Further, Plaintiff's proposed notice should be approved to send to the group of similarly-situated employees, as defined by Plaintiff in this Memorandum, and Defendant should be compelled to provide contact information for those individuals for purposes of notice.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Timothy S. Seiler*
Ari R. Karpf, Esq.
Timothy S. Seiler, Esq.
Two Greenwood Square
3331 Street Road, Suite 128
Bensalem, PA 19020
(215) 639-0801 Phone
(215) 639-4970 Fax

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNAE HAMID, *et. al.* | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : **CIVIL ACTION NO.: 19-3773** |
| | : |
| THE CHESTER COUNTY HOSPITAL, | : |
| d/b/a PENN MEDICINE | : |
| and | : |
| UNIVERSITY OF PENNSYLVANIA | : |
| HEALTH SYSTEM | : |
| | : |
| Defendants. | : |
| | : |

## **CERTIFICATE OF SERVICE**

I certify that on the date set forth below I served the Defendants with Plaintiffs' Motion for Conditional Class Certification via ECF:

Michael J. Puma, Esq.
Brett Janich, Esq.
Morgan Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

*/s/ Timothy S. Seiler*
Timothy S. Seiler, Esq.

Dated: March 23, 2020

18